Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL III

| | | |
|---|---|---|
| R/O RENTAL EQUIPMENT, INC.<br><br>Demandante-Apelada<br><br>V.<br><br>MUNICIPIO AUTÓNOMO DE JUANA DÍAZ POR CONDUCTO DE SU ALCALDE HON. RAMÓN A. HERNÁNDEZ TORRES<br><br>Demandado-Apelante | KLAN202300229 | Apelación procedente del Tribunal de Primera Instancia, Sala Superior de Ponce<br><br>Caso Núm. JD2019CV00651 (602)<br><br>Sobre:<br>Cobro de Dinero |

Panel integrado por su presidente, el Juez Figueroa Cabán, la Jueza Grana Martínez y el Juez Rodríguez Flores.

Grana Martínez, Jueza Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 31 de mayo de 2023.

El apelante, Municipio de Juana Díaz, solicita que revoquemos una sentencia de cobro de dinero dictada por el Tribunal de Primera Instancia.

La apelada, R/O Rental Equipment, Inc., presentó su oposición al recurso.

**I.**

Los hechos procesales pertinentes para atender y resolver la controversia planteada son los siguientes.

R/O Rental presentó una demanda por cobro de dinero contra el apelante en la que hizo las alegaciones siguientes. El 14 de abril de 2015, el Municipio adjudicó a favor de R/O la subasta para la construcción del Estadio de Beisbol del Bo. Canas Abajo de Juana Díaz. El 13 de enero de 2016, ambas partes suscribieron el Contrato de Construcción número 2016-000493. Las partes acordaron que la apelada iba a cobrar el precio alzado de $1,999,916.10 y que los trabajos se iban a realizar en dos fases. Para la primera fase se

certificaron fondos por la cantidad de $1,456,010.39. La primera fase tenía que concluirse en 273 días, contados a partir de la Orden de Compra y la Carta de Comienzo emitida por la Oficina de Planificación del Municipio. El contrato se enmendó para incluir la segunda fase y los cambios ocurridos en el desarrollo del proyecto. Las enmiendas ocasionaron la extensión del contrato hasta el 30 de septiembre de 2017. La vigencia del contrato se extendió hasta el 31 de diciembre de 2017. No obstante, el paso del huracán María ocasionó la paralización del proyecto. El 20 de abril de 2018, el Municipio firmó el Acta de Reinicio, en la que ordenó a la apelada reiniciar los trabajos que debía completar en treinta días. El término concedido venció el 20 de mayo de 2018. Véase, pág. 1 del apéndice.

La apelada también hizo las alegaciones siguientes. El 18 de mayo de 2018, el Municipio otorgó la Carta de Aceptación Final del proyecto en donde reconoció que el costo final del proyecto era $1,701,816.83. El Municipio informó a la apelada los documentos que debía proveer para recibir la devolución del 10% de los fondos retenidos. La apelada cumplió con lo requerido. El 22 de mayo de 2018, la apelada envió al Municipio la Certificación, en la que solicitó la devolución de $170,181.68. El 26 de febrero de 2019, el Municipio pagó a la apelada $114,431.71 correspondientes al dinero retenido. No obstante, le adeuda $55,749.91. La deuda está vencida, líquida y exigible. El Municipio se niega a pagar, a pesar de todas las gestiones realizadas. Véase, pág. 1 del apéndice.

El Municipio de Juana Díaz alegó que no podía pagar los trabajos que la apelada realizó entre el 20 de abril y 20 de mayo de 2018, porque para esas fechas no existía un contrato vigente. Además, adujo que la apelada tenía que devolverle $145,267.27 ya pagados, porque el pago era ilegal.

El apelante presentó una Reconvención Enmendada en la que alegó que el contrato venció el 31 de diciembre de 2017. Aunque

reconoció que el 20 de abril de 2018, el Ingeniero Moisés Torres Méndez otorgó una Acta de Reinicio, alegó que para esa fecha no existía un contrato vigente. Según el Municipio, los trabajos realizados entre el 20 de abril de 2018 y el 20 de mayo de 2018 estaban valorados en $161,408.07 de los que pagó a la apelada, $145,267.27. El Municipio admitió que el 18 de mayo de 2018 aceptó el proyecto y que el 26 de febrero de 2017 pagó a la apelada $114.431.77 como pago parcial al 10% del dinero retenido. No obstante, alegó que se percató de la inexistencia de un contrato, luego de que le hizo el pago a la apelada. El apelante reconoció la existencia de un balance de $55,755.91, de los que la apelada tenía que recibir $49,349.24. Sin embargo, se negó a pagar el balance pendiente, debido a la inexistencia de un contrato. Véase, pág. 18 del apéndice.

La Reconvención Enmendada incluyó las causas de acción siguientes. El Municipio solicitó en la primera causa de acción una Sentencia Declaratoria reconociendo que el contrato venció el 31 de diciembre de 2017, que la apelada no tiene derecho a cobrar por el trabajo que realizó luego de esa fecha y que tiene que devolverle al Municipio $145,267.27. La segunda causa de acción es por el cobro de esa cantidad, porque el pago era improcedente en derecho. El Municipio reclamó en la tercera causa de acción el pago realizado de $13,519.41 por los arbitrios de construcción y patente municipal de la fase 2 A del proyecto. El apelante solicitó en la cuarta causa de acción la aplicación de la figura de compensación, porque ambas partes son acreedores y deudores recíprocos. El Municipio adujo que le adeuda a la apelada es $39,495.11, pero esta le adeuda al Municipio $158,786.68. Por lo que luego de aplicada la compensación, la apelada todavía le debe $119,291.57. Véase, pág. 38 del apéndice.

La parte apelada alegó que los contratos de construcción terminan con la finalización de la obra y el cierre administrativo del

proyecto. R/O adujo que el Municipio incumplió con su obligación de desembolsar la totalidad de los fondos del proyecto y que actúa contra sus propios actos debido a los pagos ya realizados.

Las partes estipularon en el Informe de Conferencia Con Antelación al Juicio los hechos siguientes:

> …
> 8. El 13 de enero de 2016 fue suscrito entre R/O y el Municipio Autónomo de Juana Díaz, Contrato de Construcción número 2016–000493, para la realización del proyecto de construcción de la subasta número 2014-2015-004.
>
> 9. El contrato número 2016-000493 fue presentado y registrado en la Oficina del Contralor de Puerto Rico.
>
> …
> 11. Como parte del Contrato, el Municipio y R/O acordaron que el Municipio retendría el 10% de todas las facturas que le pagará a R/O y que dicho dinero se le pagaría al finalizar la obra y luego de que R/O entregara la Solicitud de Permiso de Uso firmada y notariada, certifique no tener deudas con suplidores y obtenga los relevos de la Corporación del Fondo del Seguro del Estado y de la compañía que emitió la fianza de ejecución de pago.
>
> 12. El 20 de septiembre de 2017, Puerto Rico sufrió el paso del huracán María, el que afectó severamente al Municipio. En cuanto al Proyecto, el paso del huracán María provocó la suspensión de los trabajos de construcción.
>
> 13. El 20 de abril de 2018, el Sr. Ricardo Ortega (a nombre de R/O) y el Ing. Moisés Torres Méndez (a nombre del Municipio) otorgaron un documento titulado Acta de Reinicio en el que indicaron que el Proyecto reiniciaría ese día y R/O tendría 30 días para culminarlo, o sea, hasta el 20 de mayo de 2018.
>
> 14. El 18 de mayo de 2018, el Municipio aceptó el Proyecto y le solicitó a R/O que cumpliera con lo acordado en el Contrato para pagarle el 10% retenido.
>
> 15. Entre el 20 de abril de 2018 y el 20 de mayo de 2018, R/O realizó trabajos por la cantidad de $162,608.07, de los que el Municipio le pagó $145,267.27.
>
> 16. El 26 de febrero de 2019, el Municipio le pagó a R/O la suma de $114,431.77 como pago parcial del 10% retenido, quedando un balance de $55,755.91.

Véase, pág. 119 del apéndice.

El 27 de enero de 2021, el TPI dictó Sentencia Parcial de desistimiento con perjuicio en cuanto a la causa de acción por cobro de patente municipal y arbitrios de construcción.

El Municipio solicitó al TPI que dictara sentencia sumaria a su favor, porque el contrato venció el 31 de diciembre de 2017. El apelante adujo que la apelada no tenía derecho a cobrar por los trabajos realizados posterior a esa fecha.

La apelada se opuso y solicitó sentencia sumaria a su favor.

El 17 de enero de 2023, el TPI dictó la Sentencia apelada en la que denegó la solicitud de sentencia sumaria del Municipio. Sin embargo, concedió la solicitud de sentencia sumaria de la apelada, porque reconoció la validez legal del Acta de Reinicio. El foro apelado determinó que la falta de inscripción en la Oficina del Contralor no causa la nulidad del documento. Por consiguiente, reconoció que el Municipio tenía una deuda líquida, vencida y exigible que pagar a la apelante. El TPI ordenó al Municipio de Juana Díaz a registrar y remitir a la Oficina del Contralor el Acta de Reinicio y las enmiendas del contrato que no había registrado. Además, ordenó al Municipio pagar a la apelada la suma no controvertida de $55,749, más el 0.50% de interés legal hasta el saldo total de la obligación.

**II.**

**A.**

La sentencia sumaria propicia la solución justa, rápida y económica de aquellas controversias en las que no es necesario realizar un juicio plenario. *Universal Insurance v. ELA,* 2023 TSPR 24; *Pérez Vargas v. Office Depot,* 203 DPR 687, 699 (2019); *González Santiago v. Baxter Health Care,* 202 DPR 281, 290 (2019). No obstante, la sentencia sumaria está limitada a los casos en los que no existe controversia de hechos medulares y lo único que resta en aplicar el derecho. *Universal Insurance v. ELA,* supra; *Municipio de Añasco v. ASES et al,* 188 DPR 307, 326 (2013).

La Regla 36.1 de Procedimiento Civil, 32 LPRA Ap. V, permite que cualquiera de las partes solicite sentencia sumaria a su favor sobre la totalidad del pleito o cualquier parte de la reclamación. El solicitante deberá presentar una moción basada en declaraciones juradas u otra evidencia que demuestre que no existe una controversia sustancial de hechos esenciales y pertinentes. Además, deberá establecer su derecho con claridad y demostrar que no existe controversia sustancial o real en cuanto a algún hecho material. Los hechos materiales son todos los que puede afectar el resultado de la reclamación conforme al derecho sustantivo aplicable. La controversia sobre el hecho material tiene que ser real. *Universal Insurance v. ELA,* supra.

Cualquier duda no es suficiente para derrotar una solicitud de sentencia sumaria. La duda debe colegir la existencia de una controversia real y sustancial sobre hechos esenciales y pertinentes. *Bobe et al v. UBS Financial Services,* 198 DPR 6, 20-21 (2017).

El oponente no puede descansar meramente en las aseveraciones o negaciones contenidas en sus alegaciones y tiene que contestar la moción de sentencia sumaria en forma detallada y específica como lo hiciera la parte solicitante. *Bobe et al v. UBS Financial Services,* supra, pág. 21.

Según el inciso (e) de la Regla 36.3, 32 LPRA Ap. V, la sentencia sumaria será dictada inmediatamente si las alegaciones, deposiciones contestaciones a interrogatorios y admisiones ofrecidas, en unión a las declaraciones juradas, si las hay, u otra evidencia demuestran que no hay controversia real sustancial en cuanto a algún hecho esencial y pertinente. Además, el tribunal tiene que estar convencido de que como cuestión de derecho procede dictar sentencia sumaria a favor de la promovente.

La Regla 42.2, 32 LPRA Ap. V, exime a los tribunales determinar los hechos probados y consignar por separados las

conclusiones de derecho al momento de resolver mociones bajo las reglas 36.1 y 36.2, 32 LPRA Ap. V. El Tribunal Supremo de Puerto Rico resolvió en *Pérez Vagas v. Office Depot,* supra, que la Regla 42.2, *supra,* releva a los tribunales de consignar sus determinaciones de hecho al momento de disponer de una controversia sumariamente. La Regla 36.4, 32 LPRA Ap. V, únicamente se activa cuando la solicitud de sentencia sumaria es denegada total o parcialmente, pero no se activa cuando es concedida en su totalidad.

**B.**

Los tribunales apelativos estamos en la misma situación que el Tribunal de Primera Instancia al momento de evaluar la procedencia de una moción de sentencia sumaria. Nuestra revisión es de novo y tiene que estar basada en la Regla 36, *supra,* y su jurisprudencia interpretativa. Si encontramos que los hechos materiales están realmente incontrovertidos debemos revisar de novo, si el tribunal aplicó correctamente el derecho. *Segarra Rivera v. International Shipping et al,* 208 DPR 964, 981-982 (2022); *González Santiago v. Baxter Healthcare,* 202 DPR 281, 291 (2019).

**C.**

El Estado tiene la obligación constitucional de salvaguardar los fondos públicos mediante los principios fiduciarios y éticos más altos. La Sec. 9 del Artículo VI de nuestra Constitución establece que las propiedades y fondos públicos únicamente podrán utilizarse para fines públicos, el sostenimiento y el funcionamiento de las instituciones del Estado. La legislatura ha aprobado leyes que imponen controles fiscales y de contratación gubernamental, para cumplir con el mandato constitucional. Un contrato entre una parte privada y el Estado que no cumple con estas leyes es nulo e inexistente. *Rodríguez Ramos et al v. ELA,* 190 DPR 448,456-457 (2014).

Los estatutos que regulan y ordenan la realización de obras y adquisición de bienes y servicios para el Estado, sus agencias e instrumentalidades y los municipios protegen los intereses y recursos fiscales del Pueblo contra el dispendio, la prevaricación, el favoritismo y los riesgos del incumplimiento. *Landfill Technologies v. Mun. de Lares,* 187 DPR 794, 802 (2013); *Colón Colón v. Municipio de Arecibo,* 170 DPR 718, 724-725 (2007). La buena administración de un gobierno es una virtud de la democracia. Una buena administración implica que el gobierno lleve sus funciones como comprador con eficacia, honestidad y corrección. Así garantiza la protección de los intereses y dineros del pueblo que representa. *Colón Colón v. Municipio de Arecibo,* supra.

El Tribunal Supremo de Puerto Rico resolvió en *Landfill Technologies v. Municipio de Lares,* supra, págs. 800-802, que los contratos con los municipios no se rigen por la teoría contractual del Código Civil. Nuestro más Alto Foro judicial local concluyó que la validez de los contratos con los municipios tenía que ser determinada de acuerdo con la entonces vigente Ley de Municipios Autónomos[1]. El Artículo 8.016 de esa ley, 21 LPRA sec. 4366, exigía que los municipios mantuvieran un registro de todos los contratos otorgados incluyendo sus enmiendas y que enviaran una copia a la Oficina del Contralor dentro de los quince días de otorgado.

Los contratos entre un ente privado y el Estado tienen que constar por escrito. El cumplimiento de este requisito no tiene excepción alguna. El contratista que realiza una obra sin tener un contrato escrito viola las normas de contratación gubernamental. La validación de un contrato retroactivamente fomenta la corrupción. El contratista podría realizar la obra sin un contrato escrito para presionar su otorgamiento futuro. Las partes que contratan con una

---

[1] El 14 de agosto de 2020, mediante la aprobación de la Ley 107-2020, se derogó la Ley de Municipios Autónomos por el Código Municipal de Puerto Rico.

entidad del gobierno sin cumplir con los requisitos de contratación gubernamental se arriesgan a asumir la responsabilidad de sus pérdidas. El Tribunal Supremo de Puerto Rico ha rechazado consecuentemente la aplicación de los remedios de equidad para convalidar la obligación pública cuando no existe un contrato escrito. *Rodríguez Ramos et al v. ELA,* supra, págs. 460-461.

En *Colón Colón v. Municipio de Arecibo,* supra*,* pág. 726*,* el Tribunal Supremo de Puerto Rico se expresó específicamente sobre los requisitos que tienen que cumplir los contratos otorgados con los municipios. Al igual que todo contrato gubernamental, es indispensable que el contrato sea por escrito. Este requisito es de carácter formal o sustantivo. Su propósito es evitar pagos y reclamaciones fraudulentas e ilegales. El contrato escrito es la mejor evidencia de las obligaciones recíprocas que contraen las partes. Además, les libra de controversias futuras sobre los acuerdos originales, porque los términos contractuales constan de forma objetiva en el acuerdo escrito. El contrato escrito protege los derechos de ambas partes en caso de incumplimiento.

El más Alto Foro judicial local resolvió en *Colón Colón v. Municipio de Arecibo,* supra, pág. 727, que los contratos municipales tenían que cumplir con el entonces vigente Artículo 8.016 de la Ley de Municipios Autónomos, 21 LPRA sec. 4366, así como con el Artículo 1 de la Ley Núm. 18 de 30 de octubre de 1975, 2 LPRA sec. 97. Ambos artículos exigen que los municipios al igual que el Estado mantengan un registro fiel de los contratos que suscriban y que remitan una copia al Oficina del Contralor dentro de los 15 días siguientes a su otorgamiento. *Colón Colón v. Municipio de Arecibo,* supra, pág. 727.

La intención del legislador al ordenar la inscripción de los contratos gubernamentales en la Oficina del Contralor es crear un mecanismo de cotejo y publicidad. No obstante, el incumplimiento con el requisito de registrar y remitir un contrato a la Oficina del

Contralor de Puerto Rico puede ser subsanado y no acarrea la nulidad. Sin embargo, su incumplimiento impide el desembolso de los fondos públicos hasta tanto los contratos no sean registrados conforme a la ley. *Rodríguez Ramos et al v. ELA,* supra, pág. 462.

**D.**

Las únicas deudas que pueden reclamarse judicialmente son las vencidas, líquidas y exigibles. Una deuda es líquida cuando es cierta, determinada y exigible, debido a que puede demandarse su cumplimiento. El demandante que expone que una deuda es líquida y exigible está dando por hecho que el deudor aceptó que la cuantía es correcta y que está vencida. *RMCA v. Mayor Bianchi,* 208 DPR 100, 108-109 (2021).

**III.**

La controversia se reduce a determinar si el TPI erró al denegar la moción de sentencia sumaria que presentó el Municipio de Juana Díaz y por el contrario dictar sentencia sumaria a favor de la apelada.

Los hechos esenciales y materiales no están en controversia, porque fueron estipulados por las partes. El Municipio y R/O están de acuerdo en que el 13 de enero de 2016 suscribieron el Contrato de Construcción número 2016-000493 adjudicado mediante la subasta número 2014-2015-004. Ambas partes reconocen que el contrato se presentó y registró en la Oficina del Contralor de Puerto Rico, conforme establece la ley. Igualmente aceptan que acordaron dividir el Proyecto en dos fases. Las partes reconocen que acordaron realizar la primera fase por $1,456,010.39, debido a que era la cantidad de fondos disponibles. Igualmente aceptan que acordaron realizar la segunda fase por la diferencia de $543,905.71. Las partes estipularon que acordaron que el Municipio retendría el 10% de todas las facturas pagadas a R/O. Ambas admiten que el Municipio pagaría ese 10% a R/O al finalizar la obra y luego de que entregara la Solicitud de Permiso de Uso, certificara no tener deudas con suplidores y

obtuviera los relevos de la Corporación del Fondo del Seguro del Estado y de la compañía que emitió la fianza de ejecución de pago.

El contrato de construcción y eje de la controversia fue suscrito por las partes el 13 de enero de 2016 y se presentó y admitió como evidencia. Véase, pág. 64 del apéndice. Las cláusulas pertinentes a la controversia son textualmente las siguientes:

CUARTA:-------------------------------------------------------------
TÉRMINO DE LOS SERVICIOS: Que la SEGUNDA PARTE se obliga y compromete a comenzar la Fase 1 de las obras aquí contratadas, inmediatamente a partir del recibo de la Orden de Compras y la Carta de Comienzo que emite la Oficina de Planificación del Municipio de Juana Díaz. Obligándose a concluir las mismas en o antes de DOSCIENTOS SETENTA Y TRES (273) días calendario, contados a partir de la fecha de la Carta de Comienzo. El tiempo de ejecución podrá ser modificado por razones no atribuibles al contratista mediante órdenes de cambio debidamente aprobadas, según lo dispone la cláusula de enmiendas de este contrato.-----------------------------------

SEXTA:---------------------------------------------------------------
VIGENCIA: Este contrato tendrá vigencia desde la firma entre las PARTES hasta el 30 de septiembre de 2016. No obstante a lo anterior, la vigencia estará sujeta a que el mismo sea debidamente registrado y que copia de ésta sea remitida a la Oficina del Contralor. El (la) Contratista no comenzará a realizar labor alguna hasta tanto el Municipio le certifique por escrito que ha registrado y enviado copia del contrato a la Oficina del Contralor. Dicha certificación deberá contener el número de registro y la fecha y hora en que fue registrado ante la oficina del Contralor. Ninguna prestación o contraprestación objeto de este contrato podrá exigirse hasta tanto el mismo se haya restado para registro en la Oficina del Contralor a tenor con lo dispuesto en la Ley Núm. 18 de 30 de octubre de 1975, según enmendada.------------------------

OCTAVA:-------------------------------------------------------------
PENALIDAD: Que las Partes acuerdan, que en caso de que la SEGUNDA PARTE no haya terminado las obras contratadas dentro del término concedido, según CLAUSULA CUARTA, salvo extensión de tiempo debidamente autorizada por la PRIMERA PARTE, por escrito, se retendrá la cantidad de $500.00 diarios de cualquier suma que se le adeude a la SEGUNDA PARTE como indemnización por los daños que tal demora pueda ocasionar a los intereses de la PRIMERA PARTE. Se hace la advertencia de que el término de los servicios, según lo dispone la cláusula cuarta de este contrato, es independiente a la vigencia del contrato.--------------------

DECIMA-PRIMERA:----------------------------------------------
10% RETENIDO: Que las Partes acuerdan que de cualquier pago que se haga a la SEGUNDA PARTE por concepto de certificaciones periódicas de trabajo

realizado, la PRIMERA PARTE habrá de retener un 10% de cada pago hasta tanto que se certifique la totalidad del contrato.---------------------------------------------------------

La devolución del 10% retenido se realizará cuando la SEGUNDA PARTE entregue la Solicitud del Permiso de Uso (ARPE 15.201), debidamente notariada en el encasillado del Contratista, para que la Administración Municipal pueda levantar el Permiso de Uso, además, evidencia de que ha sido relevado de su responsabilidad como patrono en el Fondo del Seguro del Estado, Declaración Jurada de no deudas a suplidores y el Relevo de la Fianza de Ejecución y Pago "Payment and Performance Bond".---------------------------------------------

Las partes estipulan que el paso del huracán María afectó severamente al Municipio de Juana Díaz y provocó la suspensión de los trabajos de construcción. Ambas reconocen que el 20 de abril de 2018, el Sr. Ricardo Ortega compareció en representación de R/O y junto al Ingeniero Moisés Torres Méndez, en representación del Municipio, otorgaron un documento titulado Acta de Reinicio. Las partes reconocen que acordaron reiniciar el proyecto el 20 de abril de 2018 y que R/O tenía 30 días para terminarlo. El Municipio y R/O estipularon que ese término venció el 20 de mayo de 2018. Ambas coinciden en que R/O realizó trabajos valorados en $162,608.07, luego de que otorgaron el acta. Según lo estipulado, R/O hizo los trabajos entre el 20 de abril de 2018 y el 20 de mayo de 2018. El Municipio admitió que pagó $145,267.27 a la apelada por los trabajos que realizó durante el periodo acordado en el Acta de Reinicio.

Dicho documento forma parte de la evidencia admitida y examinada. Su texto es el siguiente:

Hoy 20 de abril de 2018 se firma el acta de reinicio del mencionado proyecto, el cual tenía una vigencia de 10 días calendarios en el momento que fue paralizado el 20 de septiembre de 2017. Así las cosas se le otorgan nuevamente los 10 días calendarios para completar los trabajos y en adición, se otorgan 20 días adicionales por la dilación de entrega de techo.

Firman la misma el representante de la empresa y el representante del Municipio de Juana Díaz, hasta el 20 de mayo de 2018 dando fe del mismo.

Véase, pág. 86 del apéndice del recurso.

El Municipio de Juan Díaz estipuló que el 18 de mayo de 2018 aceptó el Proyecto y que solicitó a R/O que cumpliera con lo acordado para recibir el pago del 10% retenido. El apelante también aceptó que el 26 de febrero de 2019 entregó a R/O $114,431.77 como pago parcial del 10% retenido y que quedó un balance adeudado de $55,755.91.

La carta de aceptación de la obra forma parte de la evidencia admitida y examinada. El documento está firmado por el alcalde Ramón Hernández Torres. La apelada fue advertida sobre la evidencia que debía presentar para recibir el 10% retenido. Véase, pág. 87 del apéndice. El Municipio admite que aceptó y pagó la obra, porque la apelada concluyó el trabajo para el que fue contratada. El apelante alega que la apelada tiene que devolver el dinero recibido por los trabajos que realizó durante la vigencia del Acta de Reinicio. Sostiene que la devolución procede, debido a que ese documento no cumple con las formalidades de la contratación gubernamental y el contrato de construcción venció el 31 de diciembre de 2017.

La controversia es de estricto derecho, porque estamos obligados a pasar juicio sobre la validez legal del Acta de Reinicio.

El Municipio de Juana Díaz no tiene razón. Como cuestión de derecho procede dictar sentencia sumaria a favor de la apelada. El apelante alega que el contrato de construcción venció el 31 de diciembre de 2017, conforme la enmienda firmada el 28 de febrero de 2017. La alegación del apelante es incorrecta, porque en la cláusula octava del contrato de construcción asintió a extender su término, siempre que así lo hubiese autorizado por escrito. El 20 de abril de 2018 ambas partes firmaron el Acta de Reinicio de las obras suspendidas por una razón de fuerza mayor ajena al control de los contratantes. El paso del huracán María, el 20 de septiembre de 2017, ocasionó la suspensión de los trabajos de construcción, debido a que el Municipio de Juana Díaz quedó severamente afectado. La

apelada proveyó copia del Acta de Paralización del 20 de septiembre de 2017, en la que se acordó detener el tiempo del contrato debido al paso del huracán María. Este documento está firmado por el presidente de la apelada y por el ingeniero Moisés Torres Méndez en representación del Municipio y fue estipulado por ambas partes. La capacidad legal del ingeniero Torres para representar al Municipio no ha sido cuestionada por el apelante.

Los dineros e intereses del Municipio de Juana Díaz están protegidos y no han sido lesionados. Tanto el contrato de construcción como el Acta de Reinicio cumplen con la formalidad insoslayable de constar por escrito. La apelada terminó la obra en el periodo señalado en el Acta. El 18 de marzo de 2018, el Municipio aceptó la obra sin ningún señalamiento. La apelada cumplió con los requisitos acordados para obtener el pago del 10% retenido. El contrato de construcción fue debidamente registrado en la Oficina del Contralor. Aunque el Acta de Reinicio no cumplió con el requisito de estar registrado, esa omisión es subsanable. El TPI ya ordenó al Municipio su registro en la Oficina del Contralor y el de las enmiendas que no hayan sido registradas.

La deuda de $55,755.91 cuyo pago reclama la apelada está vencida, líquida y exigible, porque fue estipulada. Ambas partes estipularon que el Municipio pagó a la apelada $114,431.77 como pago parcial del 10% retenido y que existe un balance de $55,755.91.

Luego de realizar un juicio de novo, resolvemos que no existe controversia de hechos esenciales y materiales y que, como cuestión de derecho, procede dictar sentencia sumaria a favor de R/O.

**IV**

Por las razones expuestas se confirma la sentencia sumaria apelada.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones